COPPER CANYON LAW

*43 E. 1st Avenue*
*Mesa, Arizona 85210*
*Office: (480) 833-3838*
*www.coppercanyonlaw.com*
**For Court Use Only: docketing@coppercanyonlaw.com**
Kyle O'Dwyer (036095)
kodwyer@coppercanyonlaw.com
Thomas L. Brown (031017)
Thomas@coppercanyonlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antoinette Lewis, an individual, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Clear Choice Admin Services, LLC, an Arizona limited liability company, | |
| Defendant. | |

Plaintiff, Antoinette Lewis, by and through undersigned counsel, hereby alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Ms. Lewis was at all times relevant herein a resident of Maricopa County, Arizona.

2.      Defendant Clear Choice Admin Services, LLC ("Clear Choice") was at all times relevant herein an Arizona limited liability company and held its principal place of business in Maricopa County, State of Arizona.

3.      At all times relevant herein, Ms. Lewis was an employee of Clear Choice.

4.      All acts, agreements, and contracts hereinafter alleged were to be substantially performed, and completed in Maricopa County, Arizona.

5.      All the named Defendants herein, are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and were acting within their employment with regards to the transactions hereinafter alleged.

6.      Jurisdiction and venue pursuant to 42 U.S.C. § 2000e-5(f)(3) are appropriate in this Court.

## **GENERAL ALLEGATIONS**

7.      Ms. Lewis is an African American woman and single mother of three children.

8.      Ms. Lewis was hired to work as a patient consultant for Clear Choice in or about April 2017.

9.      Clear Choice is a company that owns and operates multiple medical marijuana dispensaries and has employed more than 15 persons at all times relevant to this matter.

10.     In December 2017, there was a change in management at Clear Choice.

11.     At that time, Ms. Lewis was asked to submit her resume for consideration of a management position.

12.     Ms. Lewis submitted her resume to be considered for the management position.

13.     Ms. Lewis then met with both Maha Sweiss and Chelsea Mulligan to discuss her application to be promoted to the management position.

14.     After this meeting, Ms. Sweiss informed Ms. Lewis that Ms. Lewis would not be considered for the management position because she was a single mother whose schedule would not allow for the hours required for the position.

15.     Up to the time of this interview, Ms. Lewis had never had any incidents with her employment.

16.     Further, being a single mother had not prohibited her from performing any job duties to that time.

17.     Ms. Lewis continued in her role as a patient consultant until early 2018.

18.     In 2018, Clear Choice planned to expand to a second location.

19.     In February 2018, Ms. Lewis was promoted to the position of team lead with the expectation that she would officially start in that role in April 2018 at the second location.

20.     In opening the second location, Clear Choice hired two managers from outside the company, Mollie McCurdy and another manager.

21.     The new managers had either equivalent or less experience than Ms. Lewis.

22.     Throughout her time working at the second location, Ms. McCurdy discriminated against Ms. Lewis and attempted to make it difficult for Ms. Lewis to perform her job.

23.     While Ms. Lewis was at lunch with Ms. Mulligan, Ms. Mulligan stated to Ms. Lewis that at a previous job she intentionally decided not to hire an African American

3

male with dreadlocks because of his race based on an owner's directive.  This statement by Ms. Mulligan was hurtful and disappointing to Ms. Lewis because she is also an African American.

24.     Ms. Lewis worked alongside another employee at Clear Choice, Michael Crane.

25.     During her employment with Clear Choice, and many times while on Clear Choice property, Mr. Crane made several different unwanted sexual advances to Ms. Lewis on multiple different occasions.

26.     Also, during her employment with Clear Choice, Ms. Lewis was informed on multiple occasions of the sexual relations Michael Crane had with other female employees of Clear Choice.

27.     Ms. Lewis' Uncle passed away in April 2018 and this was a difficult time in her life.

28.     When Ms. Lewis was going through this time, Maha Sweiss, one of the owners of Clear Choice, pushed and pushed Ms. Lewis to discuss with Ms. Sweiss many personal feelings.  Ms. Lewis did so because she felt that was the only way to get back to working that day.  However, when she divulged these personal feelings, Ms. Sweiss did not help her and it seemed Ms. Sweiss only wanted to find out personal information from Ms. Lewis.

29.     Ms. Sweiss said she would pass along to upper management the difficult personal circumstances Ms. Lewis was going through but Ms. Sweiss failed to do so.

30.     Not long after this conversation, Ms. Lewis was written up for insubordination and failing to complete expectations as team lead.  There were no specific incidents indicated on the paperwork.

31.     Shortly after this write up, Ms. Lewis was berated in a meeting with Tyler Burke and Chelsea Mulligan.  During the meeting, Ms. Lewis was at one point fired but her position was also reinstated during the meeting because Ms. Lewis had not done anything wrong and Ms. Lewis begged to be reinstated.

32.     During her entire time working for Clear Choice at the second location, Ms. Lewis did not have the required dispensary agent card even though she constantly reminded her employer that they needed to obtain it for her.  Due to not having the proper credentials, her employer would require her to leave the building when state audits would occur so that the state would not be aware that her employer was requiring her to work without it.

33.     On or about May 18, 2018, Rami Sweiss, an owner of Clear Choice, made jokes in Ms. Lewis' presence about her being initially fired in the meeting with Mr. Burke and Ms. Mulligan.

34.     In late June 2018, Ms. Lewis was demoted from her role as Team Lead to the role of inventory specialist without any notice or additional comment.  Ms. Lewis reached out to management to discuss why this occurred but was never told anything more than they wanted her in the back.

35.     Ms. Lewis was now supervised by Chad Bagley.

36.     Even after Ms. McCurdy was no longer Ms. Lewis' direct supervisor, Ms. McCurdy continued to harass Ms. Lewis and pry co-workers for Ms. Lewis' personal information.

37.     Ms. McCurdy started spreading false rumors about Ms. Lewis' personal life, stating that Ms. Lewis and Michael Crane had engaged in a romantic relationship when that never happened.

38.     Ms. McCurdy's actions were reported to management, but upon information and belief, this did not result in any investigation or corrective actions.

39.     Ms. Lewis filed an Equal Employment Opportunity Commission Complaint on or about August 13, 2018 (hereafter "First EEOC Complaint"), complaining of discrimination based on sex and race.

40.     Shortly after filing the First EEOC Complaint, Rami Sweiss referred to Ms. Lewis as "Nappy Head" in Ms. Lewis' presence when Rami Sweiss was giving instructions to another employee, Chad Bagley, about tasks Ms. Lewis needed to perform.

41.     Upon Rami Sweiss leaving the room, Mr. Bagley apologized to Ms. Lewis about Ms. Sweiss' statement.

42.     At the time, the First EEOC Complaint was still pending, Mr. Crane indicated to Ms. Lewis that the Sweiss' did not want anything to do with Ms. Lewis.  Mr. Crane also stated that Ms. Sweiss wanted Ms. Lewis terminated because Ms. Lewis lodged multiple complaints.

43.     On or about August 29, 2018, the EEOC issued a Dismissal and Notice of Rights as to the First EEOC Complaint.  Ms. Lewis did not take further legal action regarding the First EEOC Complaint.

44.     After the First EEOC Complaint was filed, three of Ms. Lewis' supervisors were terminated.

45.     Due to these terminations, Michael Crane was then promoted to act as the head supervisor over the second facility, supervising Ms. Lewis.

46.     Mr. Crane and Ms. Lewis began working for Clear Choice at approximately the same time.

47.     Upon information and belief, Ms. Lewis was not promoted to a management position because she filed the First EEOC Complaint and filed other rightful complaints regarding improper employee conduct.

48.     After Mr. Crane was promoted to the supervisory position, he continued to make unwanted sexual advances on Ms. Lewis.

49.     Mr. Crane was not happy that Ms. Lewis continued to deny his unwanted sexual advances.

50.     Mr. Crane recommended that one of his friends, Scott Campbell, be promoted to a management position.

51.     Mr. Campbell had significantly less experience than Ms. Lewis and Ms. Lewis actually trained Mr. Campbell when he started working for Clear Choice.

52.     Brittany Noblitt-Wilson, another Clear Choice employee, was also made a manager and was treated very favorably by Mr. Crane and other upper management.

7

53.     Ms. Noblitt-Wilson was having sexual relations with Michael Crane, Tyler Burke (another Clear Choice manager), and Kelly Hilleboe (also another Clear Choice manager) at this time and upon information and belief, she received this favorable treatment due to her sexual actions.

54.     Ms. Lewis was not considered for promotion to a manager due to her refusal to give in to the unwanted sexual advances from Mr. Crane.

55.     Mr. Crane was also having sexual relations with another employee, Collette Nash, who also received a promotion and raise during the time they were engaged in sexual activities.

56.     On or about September 5, 2018, Mr. Crane, who at the time continued to be Ms. Lewis' supervisor, stated to her that she would be able to be promoted to Marketing Manager and he would be able to protect her from being terminated if she would be his "bottom bitch", meaning engage in sexual conduct with him.

57.     Ms. Lewis continued to decline Mr. Crane's unwanted sexual advances.

58.     Ms. Lewis attempted to express her concerns for the hostile work environment and sexual harassment that had been occurring to Dr. Joy Summers, Clear Choice's medical director.

59.     When Ms. Lewis attempted to speak with Dr. Summers, Maha Sweiss denied her the opportunity to speak with Dr. Summers.  Dr. Summers' office could only be accessed with an access card and Ms. Lewis no longer had that access after being demoted from team lead.

60.   Ms. Sweiss laughed at Ms. Lewis in her face for wanting to speak with Dr. Summers about the issues.

61.   Mr. Sweiss made it known that he no longer wanted Ms. Lewis employed by the company but was concerned about properly terminating her due to the prior EEOC complaint she had filed.

62.   Mr. Crane falsely told Ms. Noblitt-Wilson that Ms. Lewis and Mr. Crane were more than just friends, implying that Ms. Lewis and Mr. Crane had engaged in additional romantic interactions.

63.   Due to Mr. Crane's false statements, Ms. Lewis received increasingly discriminatory and hostile treatment.

64.   In October 2018, Ms. Lewis was approached by Chad Bagley who stated that he was told that if he did not fire Ms. Lewis, his job was on the line.

65.   Ms. Lewis went to discuss this with the managers on duty at the time-Michael Crane and Andrew Goodman.

66.   During this conversation, Michael Crane mocked Ms. Lewis because she wanted to discuss the ongoing harassment she was enduring with Dr. Summers.  Mr. Crane also suggested that Ms. Lewis wanted to be fired so that she could collect unemployment insurance rather than a full paycheck.

67.   After continuing to be subjected to unprofessional and hostile actions, Chad Bagley allowed Ms. Lewis to go home early due to the traumatic affect these actions were having on her.

68.     On or about the evening of October 2, 2018 and into the morning of the next day, Ms. Lewis was suffering severe emotional distress, was unable to sleep, and was crying due to the traumatic actions by the Clear Choice management.

69.     On or about October 3, 2018, Ms. Lewis did not go into work and called in sick due to the traumatic affect these actions had on her.

70.     Rather than address the issues that were causing Ms. Lewis to suffer such severe emotional distress and a hostile work environment, her supervisors were gathering statements from employees in an effort to get Ms. Lewis fired.

71.     These statements were provided by email to Dr. Summers, the same person that Ms. Lewis was precluded from discussing the ongoing harassment with by Maha Sweiss.

72.     On or about October 4, 2018, Ms. Lewis arrived at work only to be directed to leave the premises by her supervisor, Mr. Bagley, without reasoning for that order.  Ms. Lewis was ordered to return on her next scheduled workday, which was on or about October 9, 2018.

73.     However, on or about October 8, 2018, Ms. Lewis received a call, letting her know that she was to go to National PEO to meet with individuals that were supposedly human resources for Clear Choice.

74.     Prior to this instruction, Ms. Lewis was never informed that National PEO provided human resources support for Clear Choice.

75.     On or about October 9, 2018, Ms. Lewis was discharged from Clear Choice.

76. During the course of her employment, Ms. Lewis made numerous reports regarding the unwanted sexual advancements and hostile work environment to Mr. Bagley, Mr. Sweiss, Mr. Crane, and other supervisors. She also attempted to make reports to others but was prohibited from doing so by the Sweiss'.

77. Ms. Lewis was never informed that any of her reports were actually investigated and it did not appear that they were addressed in any meaningful way.

78. Due to the ongoing harassment and discrimination, Ms. Lewis has suffered significant emotional distress.

79. This severe emotional distress Ms. Lewis has endured from the hostile work environment has manifested in numerous ways, including severe stress, depression, inability to sleep, and days when she was not able to work.

80. After her termination, Ms. Lewis filed a second Charge of Discrimination with the EEOC on December 8, 2020, citing discrimination based on sex and race as well as retaliatory discharge.

81. The EEOC issued its Notice of Suit Rights for the charge on February 2, 2021 2021, which was received by Ms. Lewis on February 2, 2021. **Exhibit A.**

<u>**COUNT ONE**</u>
**TITLE VII - UNLAWFUL RACE DISCRIMINATION**

82. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

83. Ms. Lewis is a member of a protected class.

84.    As early as approximately October 2017, Ms. Lewis began to be targeted and treated differently because of her race by Clear Choice and its employees and these actions continued up through the time that Ms. Lewis was discharged from Clear Choice.

85.    Clear Choice owners and employees verbally harassed Ms. Lewis and otherwise singled her out and treated her differently than other co-workers due to her race.

86.    There are no legitimate nondiscriminatory reasons for these actions.

87.    Defendant, through its agents, have engaged in unlawful discriminatory actions due to Plaintiff's race with respect to her terms, conditions, privileges, and opportunities of employment in violation of Title VII.

88.    These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## COUNT TWO
### TITLE VII - UNLAWFUL RETALIATION 42 U.S.C § 2000e-3(a)

89.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

90.    Following enduring the discriminatory treatment at the hands of Clear Choice workers, Ms. Lewis reported their actions to various supervisors and owners of the company on numerous occasions.  She further filed the First EEOC Complaint.

91.    After and because of these reports, Ms. Lewis was consistently targeted, was demoted, and was denied promotions and other opportunities.

92.    Defendants, through its agents, have engaged in unlawful retaliatory actions in violation of Title VII.

93.     These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## COUNT THREE
### TITLE VII – *QUID PRO QUO* SEXUAL HARASSMENT

94.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

95.     Plaintiff is a member of a protected class.

96.     Plaintiff's supervisor made unwelcome and unwanted sexual advances and sexual comments to Plaintiff because of her sex.  On one occasion he said that Ms. Lewis would be promoted and would not be able to be terminated as long as she engaged in sexual acts with him.  Ms. Lewis declined to do so and was terminated shortly thereafter.  Further, other employees that engaged in sexual relations with the supervisors were treated more favorably than Ms. Lewis and given promotions and pay raises.

97.     The unwelcome sexual advances made by the supervisor toward Ms. Lewis constitutes sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

98.     Defendant and its supervisors were acting in the scope of their employment when they sexually harassed Ms. Lewis.

99.     Defendant's discriminatory practices have cause Ms. Lewis harm, including sever emotional distress and loss of wages.

## COUNT FOUR
### TITLE VII – HOSTILE WORK ENVIRONMENT

100.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

101.    Plaintiff is a member of a protected class.

102.    Plaintiff's employer's supervisors made unwelcome and unwanted sexual advances and sexual comments to Plaintiff because of her sex.  One supervisor said that Ms. Lewis would be promoted and would not be able to be terminated as long as she engaged in sexual acts with him.  Additional supervisors and the owners of the company needlessly pried into Ms. Lewis' personal life, mocked her for wanting to report harassment, and mocked her for being fired and begging to have her employment reinstated.

103.    These actions were sufficiently severe or pervasive to alter the terms, conditions, and privileges of employment, and to create an abusive, intimidating, hostile and offensive working environment for Plaintiffs.

104.    The unwelcome sexual advances made by the supervisors toward Ms. Lewis constitute sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

105.    Defendant and its supervisors were acting in the scope of their employment when they sexually harassed Ms. Lewis or otherwise engaged in these activities that created a hostile work environment.

106.    Defendant had actual and constructive knowledge of these actions that were perpetrated against Plaintiff and failed to take remedial action.

107.    Defendant's discriminatory practices have cause Ms. Lewis harm, including severe emotional distress and loss of wages.

## COUNT FIVE
## A.R.S. § 41-1463(B) UNLAWFUL RACE DISCRIMINATION

108.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

109.    Ms. Lewis is a member of a protected class.

110.    As early as approximately October 2017, Ms. Lewis began to be targeted and treated differently because of her race by Clear Choice and its employees and these actions continued up through the time that Ms. Lewis was discharged from Clear Choice.

111.    Clear Choice owners and employees verbally harassed Ms. Lewis and otherwise singled her out and treated her differently than other co-workers due to her race.

112.    There are no legitimate nondiscriminatory reasons for these actions.

113.    Defendant, through its agents, have engaged in unlawful discriminatory actions due to Plaintiff's race with respect to her terms, conditions, privileges, and opportunities of employment in violation of A.R.S. § 41-1463(B).

114.    These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## COUNT SIX
## A.R.S. § 41-1464(A) RETALIATION

115.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

15

116.    Following enduring the discriminatory treatment at the hands of Clear Choice workers, Ms. Lewis reported their actions to various supervisors and owners of the company on numerous occasions.  She further filed the First EEOC Complaint.

117.    Further, at times Ms. Lewis chose not to report these actions because Clear Choice took no action on her previous complaints.

118.    After and because of these reports, Ms. Lewis was consistently targeted, was demoted, and was denied promotions and other opportunities.

119.    Defendants, through its agents, have engaged in unlawful retaliatory actions in violation of A.R.S. § 41-1464(A).

120.    These continued actions have caused severe emotional distress and financial hardship in amounts to be proven at trial.

## COUNT SEVEN
### A.R.S. § 41-1463(B) *QUID PRO QUO* SEXUAL HARASSMENT

121.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

122.    Plaintiff is a member of a protected class.

123.    Plaintiff's supervisor made unwelcome and unwanted sexual advances and sexual comments to Plaintiff because of her sex.  On one occasion he said that Ms. Lewis would be promoted and would not be able to be terminated as long as she engaged in sexual acts with him.  Ms. Lewis declined to do so and was terminated shortly thereafter.  Further, other employees that engaged in sexual relations with the supervisors were treated more favorably than Ms. Lewis and given promotions and pay raises.

124.   The unwelcome sexual advances made by the supervisor toward Ms. Lewis constitute sexual harassment in violation of A.R.S. § 41-1463(B).

125.   Defendant and its supervisors were acting in the scope of their employment when they sexually harassed Ms. Lewis.

126.   Defendant's discriminatory practices have cause Ms. Lewis harm, including sever emotional distress and loss of wages.

**COUNT EIGHT**
**A.R.S. § 41-1463(B) HOSTILE WORK ENVIRONMENT**

127.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

128.   Plaintiff is a member of a protected class.

129.   Plaintiff's employer's supervisors made unwelcome and unwanted verbal sexual advances and sexual comments to Plaintiff because of her sex.  One supervisor said that Ms. Lewis would be promoted and would not be able to be terminated as long as she engaged in sexual acts with him.  Additional supervisors and the owners of the company needlessly pried into Ms. Lewis' personal life, mocked her for wanting to report harassment, and mocked her for being fired and begging to have her employment reinstated.

130.   These actions were sufficiently severe or pervasive to alter the terms, conditions, and privileges of employment, and to create an abusive, intimidating, hostile and offensive working environment for Plaintiffs.

131.    The actions alleged of herein are sufficient to constitute a hostile work environment under A.R.S § 41-1463(B).

132.    Defendant and its supervisors were acting in the scope of their employment when they sexually harassed Ms. Lewis or otherwise engaged in these activities that created a hostile work environment.

133.    Defendant's discriminatory practices have cause Ms. Lewis harm, including sever emotional distress and loss of wages.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.    For compensatory, nominal, general, incidental, consequential, and punitive damages as permitted by law.

B.    For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full;

C.    For prejudgment and post-judgment interest in the highest amount allowed by law; and,

D.    For such other and further relief as may be just and proper in law and equity.

//

//

//

//

RESPECTFULLY SUBMITTED this 3rd day of May, 2021.

COPPER CANYON LAW, LLC

*/s/ Kyle O'Dwyer*
Kyle O'Dwyer
43 East 1st Ave
Mesa, AZ  85210
*Attorney for Plaintiff*

Exhibit A

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Antoinette Lewis**
     **3355 E. Pueblo Ave**
     **Mesa, AZ 85204**

From:  **Los Angeles District Office**
       **255 E. Temple St. 4th Floor**
       **Los Angeles, CA 90012**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **540-2019-00155** | **Anita D. Ramos,**<br>**Investigator** | **(213) 785-3088** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| | | | |
|---|---|---|---|
| | **FOR** | Anita Denise Ramos<br>*Digitally signed by Anita Denise Ramos*<br>*DN: cn=Anita Denise Ramos, o=Equal Employment Opportunity Commission (EEOC), ou=Federal Investigator, email=anita.ramos@eeoc.gov, c=US*<br>*Date: 2021.02.02 10:55:59 -08'00'* | **2 February 2021** |

Enclosures(s)

**Rosa M. Viramontes,**
**District Director**

*(Date Issued)*

cc:   *Maha Sweis*
      *Human Resources*
      *CLEAR CHOICE ADMIN SERVICES*
      *17006 S. Weber Dr.*
      *Chandler, AZ 85226*